FILED

2006 Jan-27  PM 02:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **H&R BLOCK EASTERN ENTERPRISES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **1:05cv0801-RBP** |
| | ) | |
| **DEBORAH A. LEWIS, JIMMY JOHNSON, RITA KELLY, ALLEN BORSTOFF, and THE VILLAGE TAX TEAM,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendants' Motion for Summary Judgment filed on November 17, 2005.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, H&R Block Eastern Enterprises, Inc., is a Missouri corporation with its principal place of business in Kansas City, MO. Defendants Deborah A. Lewis, Jimmy Johnson, Rita Kelley, and Allan Borstorff are all residents of Calhoun County, Alabama, and were all formerly employed as tax professionals by H&R Block. Defendant Village Tax Team is a tax preparation business organized as a d/b/a in Calhoun County Alabama. According to Block, each of the individual defendants were employed by Block subject to a written employment

agreement.[1]

According to Block, the agreements define a "tax professional's duties" as including "attending mandatory Policy & Procedure training, telephone solicitation of clients as assigned, interviewing clients, preparing accurate returns, checking returns, offering electronic filing of returns to qualifying tax preparers..all in accordance with the law...the Company's policies and procedures, and the H&R Block, Inc. Code of Business Ethics & Conduct." Furthermore, Block claims that the agreements define "Confidential Business Information" as including, but not limited to, "names, addresses, telephone numbers, social security numbers or tax return information of one or more clients or employees of the Company." Block asserts that the tax professional agrees as part of the agreement not to use or disclose this confidential information for any reason unrelated to the undertaking of business for Block.

Block claims that the agreement stipulates that the tax professionals agree that for two (2) years following the voluntary or involuntary termination of associate's employment, they will not directly or indirectly provide any of the following services to any of Block's clients: preparation of tax returns, electronic filing of tax returns, or providing of bookkeeping or "any other alternative or additional service that the Company provides within the associate's district of employment." Block's "clients", according to the agreement, are "(I) every person or entity whose federal or state tax return was prepared or electronically transmitted by the Company in the Associate's district of employment during the 2003 or 2004 calendar year, and (II) every person or entity for whom the Company provided bookkeeping or other alternative or additional

---

[1]Specifically, Block claims that Lewis was employed under an agreement dated November 20, 2003, Johnson under an agreement dated November 10, 2003, Kelley under an agreement dated January 2, 2004, and Borstorff under an agreement dated November 10, 2003.

services within the Associate's district of employment during the 2003 or 2004 calendar year."

According to Block, the agreement also states that, for two (2) years following the termination of the associate's employment, the associate will not solicit Block's clients, nor interfere with Block's continuing relationships with its clients. Furthermore, the tax professional, Block claims, agrees that for one (1) year following termination of employment, the employee will not solicit Block's employees. The penalties agreed to for a breach of the agreement not to solicit clients are two times the average fee charged by each employee multiplied by the number of non-returning clients multiplied by the "associate's baseline client retention percentages...or, if no such percentage is defined, seventy (70) percent." For a breach of the agreement not to solicit other Block employees, the penalty agreed to is "an amount equal to two times the average fee charged the solicited employee during his her last tax season of employment."

The agreement also provides that Missouri state law shall govern, without reference to its conflict of laws principles, and Block and all associates waive trial by jury of any dispute arising out of or related to those sections of the agreement noted above. Block filed this action in the Eastern Division of the Northern District of Alabama on April 19, 2005. In Count I of the complaint, titled "Breach of Contract (Lewis, Johnson, Kelley and Borstorff)," Block alleges that the agreement is a valid and enforceable contract, and that defendants Lewis, Johnson, Kelley and Borstorff materially breached its terms and conditions. In Count II of the complaint, titled "Tortious Interference with Business Relations (All Defendants)," Block alleges that it had a business relationship with its clients, about which the defendants knew,  and a reasonable expectation to maintain its relationships from year to year. According to Block, the defendants intentionally and without justification or privilege interfered with and disrupted those

relationships.

In Count III, titled "Tortious Interference with Agreements (Village Tax Team)," Block alleges that it had a reasonable business expectancy that defendants Lewis, Johnson, Kelley and Borstorff would comply with the post-termination provisions in their respective employment agreements with Block, and that Village Tax Team had knowledge of those provisions. Block further alleges that Village Tax Team caused Lewis, Johnson, Kelley and Borstorff to breach those agreements. According to Block, Village Tax Team acted intentionally and without justification or excuse, causing Block to lose revenue and suffer damage to its business relationships and goodwill.

In Count IV, title "Misappropriation of Trade Secrets (All Defendants)," Block alleges that the defendants possess Block's confidential and proprietary business information and trade secrets, including but not limited to customer lists, pricing information and methodologies, in violation of the Alabama Trade Secret Act, Ala. Code § 8-27-2 *et seq*. Block claims that it uses reasonable efforts to maintain the secrecy of this information. According to Block, the defendants have unlawfully used this information. In Count V, titled "Civil Conspiracy (All Defendants)," Block alleges that the defendants agreed among themselves, by word or conduct, to breach their respective agreements with Block and to engage in the tortious and unlawful activities described above, with the intended effect of furthering those breaches and tortious activity. In Count VI, titled "Injunctive Relief (All Defendants)," Block incorporates all of the above allegations in its claim for injunctive relief, arguing that there is a substantial likelihood that Block will prevail on the merits, and that irreparable harm will occur to its goodwill during the pendency of this proceeding.

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the

non-moving party, although it need not resolve all doubts in a similar fashion.  *Earley v.*

*Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

**ARGUMENTS[2]**

**I.     Defendants' Motion for Summary Judgment.**

      **A.     Alabama law, Not Missouri law, controls.**

Lewis, Borstorff, Johnson, Kelley and Village Tax Team (hereinafter collectively referred

to as "the defendants"), cite *Clark Substations L.L.C. v. Ware, et al.*, 838 So. 2d 360, 363 (Al.

2002):

> In adopting § 8-1-1, the Legislature has declared the public policy of this state against
> noncompete agreements. A non-competition agreement is void, unless it falls within
> an exception stated in § 8-1-1(b).
> In *Sevier Insurance Agency, Inc. v. Willis Corroon Corp.*, 711 So. 2d 995 (Ala. 1998),
> this Court held "that a nonsolicitation agreement restrains trade and, therefore, that
> §8-1-1 applies to such an agreement and that a person may enforce such an agreement
> only if it falls within the exceptions stated in § 8-1-1(b)." 711 So. 2d at 998. "A person
> or entity seeking to enforce a contract that restrains the exercise of a lawful trade or
> business has the burden of showing that it is not void under Ala. Code 1975, §8-1-1."
> *Construction Materials, Inc. v. Kirkpatrick Concrete, Inc.*, 631 So. 2d 1006, 1009 (Ala.
> 1994). Section 8-1-1, Ala. Code 1975, provides in pertinent part:
> "(a) Every contract by which anyone is restrained from exercising a lawful profession,
> trade or business of any kind otherwise than is provided by this section is to that extent
> void.
> (b)...[O]ne who is employed as an agent, servant or employee may agree with his
> employer to refrain from carrying on or engaging in similar business and from soliciting
> old customers of such employer within a specified county, city, or part thereof so long
> as the...employer carries on a like business therein."
> Section 8-1-1 expresses the public policy of Alabama disfavoring contracts in
> restraint of trade; such contracts are disfavored 'because they tend not only to deprive
> the public of efficient services but also...to impoverish the individual.' *Construction*
> *Materials*, 631 So. 2d at 1009 (quoting *Robinson v. Computer Servicecenters, Inc.*, 346
> So. 2d 940, 943 (Ala. 1977)). A covenant not to compete that does not fall within the
> limited exceptions set out by § 8-1-1(b) is void. *Construction Materials*, 631 So. 2d at

---

[2] This section summarizes the arguments made by the parties and does not necessarily
reflect the conclusions reached by the court.

6

1009. *See also Livingston v. Dobbs*, 559 So. 2d 569 (Ala. 1990) and *Odess v. Taylor*, 282 Ala. 389, 211 So. 2d 805 (1968).

According to the defendants, Alabama has a statutory public policy disfavoring noncompete contracts. The defendants assert that, while there is an exception in the employer/employee relationship context, that exception is strictly construed:

> When application of chosen law would be contrary to fundamental policy of state of otherwise applicable law. Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties. The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law. Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue.

> Restatement (Second) Conflict of Laws § 187 cmt. g (1971).

> The Alabama Supreme Court found that "Alabama's policy against covenants not to compete is a fundamental public policy ⋯" *Cherry, Bekaert & Holland*, 582 So.2d at 507. Thus, where Alabama law would be applicable, but for the parties' selection of another state's law, and where Alabama has a greater material interest, notably a covenant that is to be enforced in Alabama and against an Alabama resident, Alabama courts will not apply another state's law, if the covenant not to compete is void under Alabama law. *Id*. at 507; *see also Unisource Worldwide, Inc. v. South Central Alabama Supply, LLC*, 199 F.Supp.2d 1194, 1201-02 (M.D. Ala. 2001). If the covenants not to compete, both the Employment Agreement, which pursuant to the contract is governed by the Alabama law, and the Purchase Agreement, which under the contract is governed by Pennsylvania law, are void under Alabama law, then the covenant not to compete contained in the Purchase Agreement being valid under Pennsylvania law is irrelevant. The court will apply Alabama law.

*Benchmark Medical Holdings, Inc. v. Rehab Solutions, L.L.C.*, 307 F. Supp. 2d 1249, 1260 (M.D. Ala. 2004).

The defendants argue that, since Block seeks to enforce a noncompete agreement in the state of Alabama for services rendered in Alabama, under the authority of *Benchmark*, Alabama law

applies.

**B.    The employer/employee exception does not apply to professionals.**

According to the defendants, the Alabama Supreme Court has consistently refused to

enforce post-employment restrictions signed by professionals. *See Friddle v. Raymond*, 575 So.

2d 1038, 1040 (Ala. 1991) (citing *Wyatt Safety Supply, Inc. v. Indus. Safety Prods., Inc.*, 566 So.

2d 728, 730 (Ala. 1990)); *Thompson v. Wiik, Reimer & Sweet*, 391 So. 2d 1016, 1019-1020 (Ala.

1980); *Grant v. Warr*, 240 So. 2d 353, 355-356 (Ala. 1970); *Odess v. Taylor*, 211 So. 2d 805,

811-812 (Ala. 1968); *Benchmark*, 307 F. Supp. 2d at 1261. The defendants point out that the

*Benchmark* court noted:

> The Alabama Supreme Court has "stated several relevant factors to be considered in
> resolving the issue as to what constitutes a profession: professional training, skill, and
> experience required to perform certain services; delicate nature of the services
> offered; and the ability and need to make instantaneous decisions." *Friddle*, 575 So. 2d
> at 1039. For purpose of non-competition agreements, under Alabama law, doctors,
> lawyers, accountants and veterinarians are all professionals. *Pitney Bowes, Inc. v.*
> *Berney Office Solutions*, 823 So. 2d 659, 665 (Ala. 2001); *Odess*, 211 So. 2d at 811-
> 812.

*Benchmark*, 307 F. Supp. 2d at 1261.

The defendants assert that Block cannot "run from the fact" that it has labeled the defendants

"professionals" in the past, as each noncompete/nonsolicitation agreement is entitled "Tax

Professionals Employment Agreement." According to the defendants, Block requires that its

employees undergo extensive training, and markets its services as done by professionals. The

defendants claim that Block stands behind its tax professionals by agreeing to the following:

> If, due to H&R Block's error on your return, you are entitled to a larger refund (or
> smaller tax liability) than what we calculated, we will refund your tax preparation fee
> for that return.

According to the defendants, under the "duties" paragraph of the employment agreement,

the tax professional is required to attend mandatory policy and procedure training, prepare accurate tax returns and to check tax returns. The defendants contend that the position of a "tax professional" is similar to that of an accountant, as both offer tax advice to clients. The defendants note that the Alabama Supreme Court has found that accountants fall under the prohibition against enforcement of noncompetes. *See Burkett v. Adams*, 361 So. 2d 1 (Ala. 1978).

The defendants claim that Block seeks to avoid the "professional function and title of its tax specialists" by adding to the agreement a footnote which states: "the term 'tax professional' as used by Block is meant to establish a mindset of quality work and businesslike demeanor by Block associates and does not signify any particular level of experience nor is it intended to grant associate any additional rights." According to the defendants, "[t]his caveat to attempt to avoid the 'professional' exemption simply does not hold water." The defendants claim that the footnote is ambiguous, and that any ambiguity must be construed against Block, the drafter of the agreement. *See BellSouth Communications Systems, L.L.C. v. West*, 902 So. 2d 653, 658 (Ala. 2004). Furthermore, the defendants claim that Alabama law requires a "meeting of the minds" between contracting parties before a contract can be enforced, so this caveat is unenforceable.

According to the defendants, Block holds its associates out as "professionals." The defendants argue that Block cannot now deny the status of the defendants as "professionals." The defendants assert that they are due summary judgment, because Alabama law will not enforce noncompete/nonsolicitation agreements against "professionals."

### C.   The agreement is void and unenforceable on its face for Defendants Borstorff, Johnson, and Kelley.

According to the defendants, the noncompete/nonsolicitation provisions of the contract

provide as follows:

### 11.   Noncompetition Covenant.

Associate covenants that for two (2) years following the **voluntary** or **involuntary** termination of Associate's employment (such period to be extended by and period(s) of violation), Associate shall not, directly or indirectly, provide any of the following services to any of the Company's Clients: (1) prepare tax returns, (2) file tax returns electronically, or (3) provide bookkeeping or any other alternative or additional service that the Company provides within the Associate's district of employment. Company Clients are defined as (I) every person or entity whose federal or state return was prepared or electronically transmitted by the Company in the Associate's district of employment during the 2003 or 2004 calendar year, and (II) every person or entity for whom the Company provided bookkeeping or other alternative or additional services within the Associate's district of employment during the 2003 or 2004 calendar year. For the purpose of this definition, Company includes a Block associate in violation of his or her employment agreement. Associate acknowledges that the Company has made available to associates information regarding the geographic boundaries of the district. (Emphasis added).

### 12.   Nonsolicitation Covenant.

Associate covenants that for two (2) years following the **voluntary** or **involuntary** termination of Associate's employment (such period to be extended by any period(s) of violation), Associate shall not directly or indirectly solicit or divert the Company's Clients or otherwise interfere with the Company's continuing relationships with its clients. Company Clients are those defined in Section 11. (Emphasis added).

According to Employment Agreement, "termination" is defined as:

The Company may discharge Associate and terminate this Agreement without notice upon a determination by the Company that cause exists for such termination. For purposes of this Agreement, "Cause" shall mean unsatisfactory performance as determined by the Company; violation of any term of this Agreement or Associate's stated intention to violate any term of this Agreement; conviction of, or plea of guilty or no contest to, a crime of dishonesty or theft during or prior to Associate's employment (subject to state law); misrepresentation on the employment application; fraud or theft; material violation of Company policies including the H&R Block, Inc. Code of Business Ethics & Conduct; and other willful misconduct by Associate.
Agreement, para. 8.

The defendants argue that the employment of Borstorff, Johnson, and Kelley was never

"terminated," either voluntarily or involuntarily. According to the defendants, the employment agreement expired by its own terms on a date certain: April 16th, 2004. The defendants claim that they were hired for a "tax season," running from January 1 to April 15. They claim they completed their obligations under the agreement, and their employment was not "terminated" according to the definition under paragraph 8 of the agreement. Rather, they argue, their period of appointment expired by the terms set forth by Block, and the agreements no longer controlled their behavior. The defendants claim that Block hires associates for a three-and-a-half month period, then forces them to re-apply for employment each new season, and that Block cannot try to enforce the agreement past the date upon which it has expired.

## II.     Block's Response.

### A.     Missouri law applies to the Agreements.

According to Block, the defendants do not, and cannot, deny that the Agreements at issue specifically provide that the law of Missouri will govern interpretation of the terms of the Agreements. Block claims that "Defendants' Motion for Summary Judgment focuses solely upon Alabama law and does not even argue that the Agreements are unenforceable under Missouri law." Block argues that if his court determines that Missouri law applies, the defendants have waived any argument that the Agreements are unenforceable under Missouri law.

Block claims that Alabama follows the principle of "lex loci contractus," which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction. *Macey v. Crum*, 30 So. 2d 666 (Ala. 1947); *J.R. Watkins Co. v. Hill*, 108 So. 244 (Ala. 1926). According to Block, Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to

govern an agreement. *Craig v. Bemis Co.*, 517 F.2d 677 (5th Cir. 1975). Block argues that Missouri law governs the Agreements because the parties elected to have the laws of Missouri govern them.

**B.      Tax professionals do not qualify as Professionals within the meaning of Alabama law.**

According to Block, the defendants do not qualify as "professionals," even if Alabama law does apply to the Agreements. Block claims that Alabama law provides that an agreement not to compete which retrains lawful activities is enforceable against non-professional employees. *Constr. Materials, Ltd., Inc. v. Kirkpatrick Conrete, Inc.*, 631 So. 2d 1006, 1009 (Ala. 1994); *Benchmark Medical Holdings, Inc. v. Rehab Solutions, L.L.C.*, 307 F. Supp. 2d 1249 (M.D. Ala. 2004). Block further claims that Alabama courts have held only that doctors, lawyers, accountants and veterinarians qualify as professionals in this context. *See, e.g., Pitney Bowes, Inc. v. Berney Office Solutions*, 823 So.2d 659 (Ala. 2001); *Benchmark*, *supra*.

**1.      Tax preparers do not meet the standard for professionals in Alabama.**

Block claims that the Alabama Supreme Court has "stated several relevant factors to be considered in resolving the issue as to what constitutes a profession: professional training, skill, and experience required to perform certain services; delicate nature of the services offered; and the ability and need to make instantaneous decisions." *Friddle v. Raymond*, 575 So. 2d 1038, 1039 (Ala. 1991). According to Block, even if the defendants could establish that they have the ability and the need to make instantaneous decisions, they have not offered any evidence in support of the remaining two factors. Block characterizes the defendants' duties as requiring "**only that they sit in front of a computer and enter data given to them by the client**."

(Emphasis added).

According to Block, the defendants offer no evidence that they received "professional training" from any source whatsoever. Block quotes the Alabama Supreme Court, explaining the difference between a "profession" and a "trade or business":

> There is much more in a profession than a traditionally dignified calling. The term refers to a group of [people] pursuing a learned art as a common calling of the spirit of a public service - no less a public service because it may incidentally be a means of livelihood. Pursuit of the learned art is the purpose. Gaining a livelihood is incidental, whereas, in a business or trade it is the entire purpose.

*Odess v. Taylor*, 211 So. 2d 805, 812 (Ala. 1968) (quoting Dean Roscoe Pound).

Block further argues that the defendants offer no evidence that allows this court to evaluate the "delicate nature of the services involved." According to Block, tax preparation services are ministerial in nature. Block cites Judge Gary Fenner of the Western District of Missouri:

> In the present case, Block had no close or long-term relationship with plaintiffs. Rather, the encounters between the parties were very isolated and of limited duration. Thus, not only was there no surrender of independence or an automatic or habitual manipulation, but the opportunity for such a situation did not even arise given the limited amount of contact between plaintiffs and Block. Block assists millions of customers each tax season and plaintiffs were but only two of them. In light of this fact, it is not surprising that the relationship between Block and customers like the plaintiffs does not develop into an intimate one.

*Rizzo v. H&R Block, Inc.*, No. 95-1001-CV-W-4 (W.D. Mo. Aug. 26, 1999).

Block argues that tax preparation, while a public service, is not a "learned art" as that term is used in Alabama. According to Block, the defendants simply do not meet the narrow definition of professional.

### 2.    No fiduciary duty exists between tax preparers and tax clients.

Though Block allows that the existence of a fiduciary duty between the employee and the client is not specifically part of the Alabama Supreme Court's designated factors to consider

when determining whether an employee is a "professional," Block nevertheless argues that the absence of a fiduciary duty "strongly mitigates (sic) against a finding that tax preparers are professionals.'" Block cites a number of courts holding that a tax preparer owes no fiduciary duty to a taxpayer. *See, e.g., Beckett v. H&R Block, Inc.*, 714 N.E. 2d 1033 (Ill. App. 1999); *Peterson v. H&R Block Tax Services, Inc.*, 971 F. Supp. 1204 (N.D. Ill. 1997); *Sorenson v. H&R Block, Inc.*, 2002 WL 31194868, No. Civ.A.99-10268-DPW (D. Mass. Aug. 27, 2002); *Rizzo v. H&R Block, Inc. et al.*, *supra*; *contra, Green v. H&R Block*, 735 A.2d 1039 (Md. App. 1999) (relying in part on a subsequently overturned opinion to find a fiduciary duty based on the sale of a refund anticipation loan under Maryland law). Block concludes that tax preparers have no fiduciary duty to taxpayers, and therefore are not professionals.

### 3.    Tax preparers are not regulated by the State of Alabama.

According to Block, the State of Alabama does not regulate or require licensing to perform tax preparation. Block notes that doctors, lawyers, accountants, and veterinarians are regulated by the state, either by a state-sanctioned governing body, the Alabama Supreme Court, statute, or a combination of all three. Block claims that, to the extent the defendants argue that they provide the same service as accountants, they are in violation of Alabama statute, which regulates the unauthorized practice of accounting. According to Block, the fact that tax preparation is unregulated by the state is further evidence that the defendants are not "professionals."

### 4.    The employment covenants are enforceable.

Block claims that the defendants' argument that some of the Agreements are unenforceable on their face because they expired on their own terms, and therefore the

employment was not "terminated," is untenable. According to Block, Alabama courts require that words in a contract be given their ordinary meaning. *Universal Underwriters Ins. Co. v. Thompson*, 776 So. 2d 81 (Ala. 2000). Block asserts that "the court must interpret a contract as to reconcile and to enforce all of its terms and not to ignore or to disregard any of its terms so long as such an interpretation is not patently unreasonable. *See Yu v. Stephens*, 591 So. 2d 858 (Ala. 1991); *Federated Guar. Life Ins. Co. v. Dunn*, 439 So. 2d 1283 (Ala. Civ. App. 1983). Block argues that the court must give the word "termination" its ordinary meaning - the "cessation of employment." Block claims that the language is not *reasonably* subject to conflicting meanings, and therefore it is unambiguous.

According to Block, the Eleventh Circuit has already held that the word "termination" is not ambiguous:

> In order to determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance...Employing this approach confirms our common sense impression that the ordinary meaning of the phrase "any termination" is plain and apparent. The word "termination" is defined as follows: 1. The act of terminating or the condition of being terminated. 2a. The end of something in time; the conclusion. b. An end of something in space; a limit or an edge. 3. A result; an outcome. American Heritage College Dictionary 1399 (3d ed. 1993). The word "terminate" has the following definition: 1. To bring to an end or a halt. 2. To occur at or form the end of; conclude. 3. To discontinue the employment of; conclude. 3. To discontinue the employment of; dismiss. –intr. 1. To come to an end. 2. To have as an end or result.

*CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001) (internal citations omitted).

Block claims that "there can be no doubt that the voluntary or involuntary termination of employment encompasses all meanings of the end of employment - even the tortured interpretation that the Agreement 'expired on its own terms.'" Block argues that, simply put, the defendants' employment terminated, and the Agreements are therefore applicable and

15

enforceable.

## III.   Defendants' Reply.

### A.      Alabama law applies.

The defendants claim that the court in *Benchmark*, *supra*, held that:

> "Alabama's policy against covenants not to compete is a fundamental public policy..."
> *Cherry, Bekaerte & Holland*, 582 So. 2d at 507. Thus, where Alabama law would be
> applicable, but for the parties' selection of another state's law, where Alabama has a
> greater material interest, notably a covenant that is to be enforced in Alabama against
> an Alabama resident, Alabama courts will not apply another state's law, if the
> covenant not to compete is void under Alabama law...The court will apply Alabama
> law.

*Benchmark*, 307 F. Supp. 2d at 1260.

The defendants also cite *Benchmark* for the following:

> When a federal court decides a state law claim, whether acting pursuant to diversity
> or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in
> which its sits. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750,
> 752 (11th Cir.1998) ("Federal courts sitting in diversity apply the forum state's
> choice-of-law rules."); *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th
> Cir.1996) (stating that federal courts should when exercising jurisdiction over pendent
> state claims and in diversity cases apply the forum state's choice of law provisions);
> *Ideal Electronic Sec. Co., Inc. v. International Fidelity Ins. Co.* 129 F.3d 143, 148
> (D.C.Cir.1997). Thus, this court applies Alabama choice of law provisions, pursuant to
> which "a contract is governed by the laws of the state where it is made except where
> the parties have legally contracted with reference to the laws of another jurisdiction."
> *Cherry, Bekaert & Holland v. Brown*, 582 So.2d 502, 506 (Ala.1991) (*citing Macey v.
> Crum*, 249 Ala. 249, 30 So.2d 666 (1947); *J.R. Watkins Co. v. Hill*, 214 Ala. 507, 108
> So. 244 (1926)). The Alabama Supreme Court indicated that the State of Alabama
> "has long recognized the right of parties to an agreement to choose a particular state's
> laws to govern an agreement." *Cherry, Bekaert & Holland*, 582 So.2d at 506.
> Nevertheless, "**[w]hile parties normally are allowed to choose another state's laws
> to govern an agreement, where application of that other state's laws would be
> contrary to Alabama policy, the parties' choice of law will not be given effect and
> Alabama law will govern the agreement.**" *Id*. at 507. To resolve such conflicts of laws
> questions, Alabama appellate courts have applied the choice of law approach set forth
> by the United States District Court for the Southern District of Alabama in *Blalock v.
> Perfect Subscription Co.*, 458 F.Supp. 123 (S.D.Ala.1978). *Id*. at 506.

*Benchmark Medical Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1258 -1259

(M.D. Ala. 2004) (emphasis added).

According to the defendants, Missouri law would allow the enforcement of a non-compete agreement under the facts and circumstances of this case. They claim that there exists no professional exemption in Missouri, and that even doctors have been found subject to a non-compete agreement. *See Silvers, Asher, Sher & McLaren v. Batchu*, 16 S.W. 3d 340 (Mo. App. 2000). The defendants argue that, since Missouri law would be contrary to Alabama's policy against non-compete agreements, *Benchmark* requires that Alabama law be applied in a suit for enforcement against an Alabama resident. The defendants claim that non-solicitation agreements are unenforceable in Missouri.

The defendants cite *Keener v. Convergys Corp.*, 342 F.3d 1264 (11th Cir. 2003) and *Palmer & Cay, Inc. v. Morris & McLennan Companies, Inc.*, 404 F.3d 1297 (2005) as providing guidance on this subject. The defendants quote *Palmer & Cay*:

> In *Keener*, we held that a district court abused its discretion by enjoining the enforcement of an agreement nationwide, when the agreement, invalid under Georgia law and public policy, had selected another state's law. See 342 F.3d at 1270. The Plaintiff, Keener, had been employed by an Ohio corporation. He worked in Illinois and Ohio, and he signed an agreement which designated Ohio law as its governing law. Keener then accepted a job at a competitor located in Georgia. He brought an action in federal district court in Georgia and sought declaratory and injunctive relief as to the validity and enforceability of the agreement. See *Keener v. Convergys Corp.*, 312 F.3d 1236, 1238-39 (11th Cir. 2002).
> On appeal we answered two relevant questions: First, whether the agreement was unenforceable under Georgia law, and second, whether the district court abused its discretion in permanently enjoining the enforcement of the agreement nationwide. *Keener*, 342 F.3d at 1267. In answering the first question we applied the law as certified by the Supreme Court of Georgia, and we held that the district court had properly granted summary judgment declaring the agreement unenforceable under Georgia law. *Id.* at 1268-69.

*Palmer & Cay*, 404 F.3d at 1297, 1308.

17

The defendants claim that the above holding makes it clear that the Eleventh Circuit would not apply Missouri law to the agreement now before this court. According to the defendants, *Benchmark*, *Keener*, and *Palmer & Cay* "limit the right of [] states to impose restrictions to be enforced in other states against their public policy." The defendants claim that to enforce the employment agreement as drafted by applying Missouri law would be contrary to *Cherry*, 562 So. 2d at 507.

> **B.    Defendants are "Professionals," and thus are exempt.**

The defendants claim that Block wants to convince people to use its tax professionals for the "public service" that it provides, yet in the face of the professional exemption for non-compete agreements, "all of a sudden a first grader with the motor skills to find the right letters and numbers on the keyboard can do the job that these Defendants were hired to do." Furthermore, according to the defendants, each defendant was required to undergo certified training for individual returns in different groupings of 87 hours, 45 hours, and 65 hours. Those number increased to 39 hours, 96 hours or more to do business returns. Each defendant received an "Associate Certification Record" marking completion of this training.

According to the defendants, the Alabama Supreme Court has developed a three-pronged analysis for determining the applicability of the professional exemption to noncompete agreements. The Court in *Pitney Bowes, Inc. v. Bernie Office Solutions*, 823 So. 2d 659, 665 (Ala. 2001), determined that a court should look at the "scale and experience required to perform certain services; [] the delicate nature of the services offered; and the ability and need to make instantaneous decisions." The defendants claim that all of these factors are present in their positions.

The defendants concede that they do not have the same degree of professional training as doctors or lawyers, but claim that accounting does not require post graduate work, so the Alabama Supreme Court must not require that work in order for an employee to qualify as a "professional." According to the defendants, Johnson has an undergraduate degree in business accounting, and was an accountant with the U.S. Air Force. He claims to have maintained his certification as an accountant and tax professional with Block and the IRS. According to the defendants, there is "no legitimate argument that can be maintained...that Jimmy Johnson does not come under the professional exemption and is due to be granted summary judgment in this case."

The defendants claim that there is little difference between what a tax professional and an accountant do, at least when it comes to the preparation of tax returns. As evidence of this, they offer that Johnson, a certified accountant, worked under the supervision of Lewis while employed by Block. Furthermore, the defendants argue that each tax professional exercises "instantaneous, independent judgment to decide which schedules to submit in the tax returns; whether a particular deduction applies, and if so, how much; whether a personal exemption applies based on the income level of the tax payer (sic); whether tax credits should be applied or not; and numerous other decisions...."

The defendants categorize Block's citation of case law from other states dealing with a requirement of a fiduciary duty for the employee to fall within the professional exemption as "irrelevant." They argue that this requirement should not be added when it has not been adopted by the Alabama Supreme Court. Regardless, according to the defendants, they maintain the same fiduciary relationship with clients for whom they prepare tax returns as would an accountant

19

performing the same function.

The defendants claim that "tax professionals" are regulated by the Internal Revenue Service. According to the defendants, this places them in a position similar to the defendant in *Friddle*, *supra*. Though the defendants concede that tax professionals are not regulated by the state of Alabama, they argue: "[i]f regulation by some government entity is required to be a professional (which has not been addressed by Alabama courts) certainly [] the required regulation by the federal government would be superior to that of the State of Alabama."

Defendants reiterate their argument that the agreements are unenforceable on their face against Borstorff, Johnson, and Kelley because the term of employment had expired. According to the defendants, the working relationship between these defendants and Block is an unusual one, because the employment is seasonal. The situations at issue here are different than those involving a sales person, the defendants claim, because a tax professional cannot immediately take up work with a competitor. The defendants argue that Block created an agreement that expires on its own terms every year, because it wished to avoid having to pay its employees year-round when they are not needed. According to the defendants, no severance pay, no guaranteed promise of re-employment was provided at the end of the contract. The defendants claim that they were signed up for basically a three month period of time.

## CONCLUSION OF THE COURT

The court starts with the conclusion that Alabama law applies. The public policy of Alabama clearly voids certain types of non-compete agreements. See 8-1-1 (a) Code of Alabama 1975. This public policy would cause the courts of Alabama to not follow the contrary law of any state, even if the parties agreed to the application of that law. *See Cherry Bekaert, Holland v.*

20

*Brown*, 582 So. 2d 502 (Ala. 1991). *Also see Keener v. Convergys Corp.*, 342 F.3d 1264 (11th

Cir. 2003); *Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297 (11th Cir.

2005).

Under Alabama law, a contract restraining the practice of a professional is void. *Odess v.

Taylor*, 282 Ala. 389, 211 So. 2d 805 (1968). The first issue here is whether tax preparers such as

the individual defendants are "professionals." The issue has apparently not been directly

addressed by Alabama courts. While the plaintiff refers to the individual defendants as "tax

professionals," that designation would not likely be controlling under Alabama law as to the term

"professional" as used in § 8-1-1(a). This court cannot conclude, as a matter of law, that the

individual defendants were professionals as intended in § 8-1-1(a). *See Odess v. Taylor*, 211 So.

2d 805, 812 (Ala. 1968). *See, however, Burkett v. Adams*, 361 So. 2d 1 (Ala. 1978).

Apparently, however, the plaintiff also so represents them in its websites, advertising, etc.

*D.B. Clayton & Associates v. McNaughton*, 279 Ala. 159, 182 So. 2d 890 (Ala. 1966).[3]

While the "professional" issue may be close and unresolved, plaintiff's own arguments

belie its entitlement to rely on the totality of its agreement. The court particularly notes its

argument that the defendants' duties require "only that they sit in front of a computer and enter

data given to them by a client." Further, the plaintiff's citation of *Rizzo v. H&R Block, Inc.*, No.

95-1001, CV-W-4 (W.D. Mo. Aug. 26, 1999), does not appear helpful to its cause.

While the individual defendants were employees of the plaintiff, if they were not

"professionals," the exception in § 8-1-1(b) does not appear to wholly apply to them. There are

---

[3]While this case involves the preparation of tax returns, there is no discussion of the
"professional" issue as such.

several reasons why it should not.

First, the individual defendants had a job certain only between November and the following April. It would be unfair and a hardship to unduly limit their employment otherwise. Second, and more importantly, by the plaintiff's own admission, these defendants were unskilled and had only a limited relationship with the client/customers.

This court concludes that the agreements between the plaintiff and the individual defendants are enforceable, at best, only in part. In *Greenlee v. Tuscaloosa Office Products*, 447 So. 2d 669, 671 (Ala. 1985), the court after quoting the Restatement (Second) of Contracts § 188, Comment B (1979), stated:

> In the present case, the restriction is not enforceable because the former employer, TOPS, has no protectable interest in restraining Greenlee's employment. The undisputed material facts show that Greenlee was hired by TOPS to service and repair copiers. He had no management or sales duties. He did not solicit new customers for TOPS, nor did he develop a special relationship with any of its existing customers. In the course of his brief three-month employment there, Greenlee had routine access to TOP's service files containing certain information, including the names of those customers who purchased copiers under continuing maintenance agreements and the respective costs of those agreements. He also had access to the price and service life information concerning Canon parts. Subsequent to his termination at TOPS, Greenlee was hired by Weatherford and worked there as a service technician for approximately eight months until enjoined by the trial court. While there, he was in no way concerned with sales nor with the solicitation of new accounts. Greenlee never discussed with the officials at Weatherford, or anyone else, any of the information to which he had access while at TOPS, and there have been no reported instances of solicitation or interference with TOPS's customers.
>
> Under these facts, TOPS does not have a legitimate interest in restraining Greenlee's employment. As the Court noted in *DeVoe v. Cheatham*, *supra*, "a simple labor skill, without more, is simply not enough to give an employer a substantial protectable right unique in his business." Greenlee only repairs copiers; he does not sell them. He did not develop a special relationship with any of TOPS's customers, and his brief access to its service files and parts information was merely incidental to the performance of his job. Furthermore, TOPS has shown no injury as a result of his employment with Weatherford. Enforcement of this restriction would, therefore, impose an undue hardship on Greenlee and prevent him from supporting himself and

22

his family, with no concomitant benefit to TOPS. *White Dairy Co. v. Davidson*, 283 Ala. 63, 214 So.2d 416 (1968).

*Greenlee v. Tuscaloosa Office Products and Supply, Inc.*, 474 So.2d 669 (1985), 671 -672 (Ala. 1985).

While not absolutely analogous, *Greenlee* is highly persuasive. This court concludes that the

subject agreements are enforceable only to the following limited extent: The defendants are

precluded from actual affirmative solicitation of customers with whom they had a prior

relationship only by virtue of their employment with the plaintiff. This aspect of the agreement

will be limited to one year and only applies to customers who were serviced by a defendant

during the period of employment and who were affirmatively and actively solicited by an

individual defendant prior to performing tax preparation work for the customer. *Compare*

*Chavers v. Copy Products Co., Inc.*, 519 So. 2d 942 (Ala. 1988); *Calhoun v. Brendle, Inc.*, 502

So. 2d 689 (Ala. 1986); and *Sevier Ins.  v. Willis Corroon Corp.*, 711 So. 2d 995 (Ala. 1998).[4]

Further, the motion will be denied as to Count IV. The motion will also be denied as to Count V,

although that denial may be insignificant.

This 27th of January, 2006.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[4]It should be noted that the agreement is not clearly void as it would be with regard to true professionals. This court is basing its decision on case law development as to reasonableness. The defendants were employees as stated in § 8-1-1(b). *See, however, Keener* and *Palmer & Cay, Inc.*, *supra*. If the defendants provide controlling Alabama law which holds that contracts of this type cannot be "blue-pencilled," this court will reconsider. *But see, e.g., King v. Head Start Family Hair Salons, Inc.*, 886 So. 2d 769, 772 (Ala. 2004).