FILED

2006 Mar-30  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| H&R BLOCK EASTERN ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **1:05cv0801-RBP** |
| | ) | |
| DEBORAH A. LEWIS, JIMMY JOHNSON, RITA KELLY, ALLEN BORSTOFF, and THE VILLAGE TAX TEAM, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff's  Motion for Alter, Amend or Vacate this

court's January 27, 2006 Summary Judgment filed on February 10, 2006.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, H&R Block Eastern Enterprises, Inc., is a Missouri corporation with its

principal place of business in Kansas City, MO. Defendants Deborah A. Lewis, Jimmy Johnson,

Rita Kelley, and Allan Borstorff are all residents of Calhoun County, Alabama, and were all

formerly employed as tax professionals by H&R Block. Defendant Village Tax Team is a tax

preparation business organized as a d/b/a in Calhoun County Alabama. According to Block, each

of the individual defendants were employed by Block subject to a written employment

1

agreement.[1]

According to Block, the agreements define a "tax professional's duties" as including "attending mandatory Policy & Procedure training, telephone solicitation of clients as assigned, interviewing clients, preparing accurate returns, checking returns, offering electronic filing of returns to qualifying tax preparers..all in accordance with the law...the Company's policies and procedures, and the H&R Block, Inc. Code of Business Ethics & Conduct." Furthermore, Block claims that the agreements define "Confidential Business Information" as including, but not limited to, "names, addresses, telephone numbers, social security numbers or tax return information of one or more clients or employees of the Company." Block asserts that the tax professional agrees as part of the agreement not to use or disclose this confidential information for any reason unrelated to the undertaking of business for Block.

Block claims that the agreement stipulates that the tax professionals agree that for two (2) years following the voluntary or involuntary termination of associate's employment, they will not directly or indirectly provide any of the following services to any of Block's clients: preparation of tax returns, electronic filing of tax returns, or providing of bookkeeping or "any other alternative or additional service that the Company provides within the associate's district of employment." Block's "clients", according to the agreement, are "(I) every person or entity whose federal or state tax return was prepared or electronically transmitted by the Company in the Associate's district of employment during the 2003 or 2004 calendar year, and (II) every person or entity for whom the Company provided bookkeeping or other alternative or additional

---

[1]Specifically, Block claims that Lewis was employed under an agreement dated November 20, 2003, Johnson under an agreement dated November 10, 2003, Kelley under an agreement dated January 2, 2004, and Borstorff under an agreement dated November 10, 2003.

services within the Associate's district of employment during the 2003 or 2004 calendar year."

According to Block, the agreement also states that, for two (2) years following the termination of the associate's employment, the associate will not solicit Block's clients, nor interfere with Block's continuing relationships with its clients. Furthermore, the tax professional, Block claims, agrees that for one (1) year following termination of employment, the employee will not solicit Block's employees. The penalties agreed to for a breach of the agreement not to solicit clients are two times the average fee charged by each employee multiplied by the number of non-returning clients multiplied by the "associate's baseline client retention percentages...or, if no such percentage is defined, seventy (70) percent." For a breach of the agreement not to solicit other Block employees, the penalty agreed to is "an amount equal to two times the average fee charged the solicited employee during his her last tax season of employment."

The agreement also provides that Missouri state law shall govern, without reference to its conflict of laws principles, and Block and all associates waive trial by jury of any dispute arising out of or related to those sections of the agreement noted above. Block filed this action in the Eastern Division of the Northern District of Alabama on April 19, 2005. In Count I of the complaint, titled "Breach of Contract (Lewis, Johnson, Kelley and Borstorff)," Block alleges that the agreement is a valid and enforceable contract, and that defendants Lewis, Johnson, Kelley and Borstorff materially breached its terms and conditions. In Count II of the complaint, titled "Tortious Interference with Business Relations (All Defendants)," Block alleges that it had a business relationship with its clients, about which the defendants knew,  and a reasonable expectation to maintain its relationships from year to year. According to Block, the defendants intentionally and without justification or privilege interfered with and disrupted those

3

relationships.

In Count III, titled "Tortious Interference with Agreements (Village Tax Team)," Block alleges that it had a reasonable business expectancy that defendants Lewis, Johnson, Kelley and Borstorff would comply with the post-termination provisions in their respective employment agreements with Block, and that Village Tax Team had knowledge of those provisions. Block further alleges that Village Tax Team caused Lewis, Johnson, Kelley and Borstorff to breach those agreements. According to Block, Village Tax Team acted intentionally and without justification or excuse, causing Block to lose revenue and suffer damage to its business relationships and goodwill.

In Count IV, title "Misappropriation of Trade Secrets (All Defendants)," Block alleges that the defendants possess Block's confidential and proprietary business information and trade secrets, including but not limited to customer lists, pricing information and methodologies, in violation of the Alabama Trade Secret Act, Ala. Code § 8-27-2 *et seq*. Block claims that it uses reasonable efforts to maintain the secrecy of this information. According to Block, the defendants have unlawfully used this information. In Count V, titled "Civil Conspiracy (All Defendants)," Block alleges that the defendants agreed among themselves, by word or conduct, to breach their respective agreements with Block and to engage in the tortious and unlawful activities described above, with the intended effect of furthering those breaches and tortious activity. In Count VI, titled "Injunctive Relief (All Defendants)," Block incorporates all of the above allegations in its claim for injunctive relief, arguing that there is a substantial likelihood that Block will prevail on the merits, and that irreparable harm will occur to its goodwill during the pendency of this proceeding.

4

On January 27th, this court filed an Order granting in part and denying in part a Motion for Summary Judgment filed by the defendants in this case. The Motion was granted as to Counts I, II, and III except to the extent that the defendants actively and affirmatively solicit or have solicited clients of the plaintiff who were serviced by the defendants during their period of employment with the plaintiff and who were or are solicited within one year of the termination of the defendants' employment. The Motion was denied as to Counts IV and V. This court did not address Count VI.

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory

allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[2]

**I.      Plaintiff's Motion to Alter, Amend or Vacate.**

**A.      The defendants did not raise the duration of the covenants, their scope, Block's protectable interest, or potential hardship on the defendants.**

According to Block, Lewis and the other defendants offered no evidence in support of any of the above grounds. Block asserts that the defendants did not ask the court to "blue pencil" the covenants, but only sought their invalidation on the ground that they were "professionals." Block claims that, due to the limited grounds raised by the defendants and the limited evidence offered in support thereof, Block did not offer any evidence or argument concerning the reasonableness of the covenants' scope or duration as written, the extent of Block's protectable interest, alleged hardship to defendants, or other issues as to which the court adjudicated in its Order and Opinion. Block cites *John Deere Co. v. American National Bank, Safford*, 809 F.2d 1191, 1192

---

[2] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

6

(5th Cir. 1987), for its assertion that "a district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party." *See also Capital Films Corp. v. Charles Fries Productions, Inc.*, 628 F. 2d 387, 390-91 (5th Cir. 1980); *Sharlitt v. Gorinstein*, 535 F.2d 282, 283 (5th Cir. 1976). According to Block, the defendants failed to show that no genuine issue of material fact existed as to the enforceability of the noncompetition covenants as written.

**B.      The particulars of the court's errors.**

According to Block, the court erred in the following particulars:

1.      declining to enforce the covenants for a period of two years (as they are drafted), as such a period is well within the limits set in preceding cases by the Alabama Supreme Court. *See, e.g., Clark v. Lib. Nat'l Life Ins. Co.*, 592 So. 2d 564 (Ala. 1992); *Central Bancshares of the South, Inc. v. Puckett*, 584 So. 2d 829, 831 (Ala. 1991). Block states: "the Supreme Court has held that a noncompetition covenant may be enforced beyond its stated temporal limit if it is shown that the former employee violated the covenant during its term, *see Knox Kershaw, Inc. v. Kershaw*, 598 So. 2d 1372 (Ala. 1992), which principle the Court's ruling ostensibly obviates."

2.      limiting enforcement to cases only of "active solicitation," because the covenants prohibit more activity than active solicitation, and Block's protectable interest in its customer base is threatened by the defendants' doing business with any of Block's customers.

3.      limiting enforceability to those customers whom defendants actually serviced while Block employees is insufficient to protect Block's interest.

7

4.      concluding that enforcement of the covenants as written would constitute a

hardship on defendants, when defendants offered no evidence to support such a

conclusion.

## II.      The defendants' response.

### A.      The court's "Blue Pencil Prerogative."

According to the defendants (hereinafter "Lewis"), the court has the authority to blue

pencil an employment contract to conform the covenant to enforceable parameters. Lewis quotes

*Benchmark Holdings, Inc. v. Barnes*, 328 F. Supp. 2d 1236, 1257 (M.D. Ala. 2004):

> Under Alabama law, with regard to non-competition agreements, 'an
> unreasonable limitation or restriction may be stricken from the
> pertinent contractual provision, leaving the balance of the provision
> binding on the parties.'" *Cullman Broadcasting Co., Inc. v. Bosley*,
> 373 So.2d 830, 835 (Ala. 1979); *see also Mason Corporation v.
> Kennedy*, 286 Ala. 639, 244 So.2d 585, 590 (Ala. 1971) (holding that
> "a court of equity has the power to enforce a contract against
> competition although the territorial periods stipulated may be
> unreasonable, by granting an injunction restraining the respondent
> from competing for a reasonable time and within a reasonable area").

Lewis also states, "...Alabama courts, unlike Georgia courts, typically "blue pencil" otherwise

unenforceable provisions of a non-compete agreement." *Jenkins Brick Co. v. AAA Spec Block,

Inc.*, 321 F.3d 1366, 1370 n.4 (11th Cir. 2003).

Lewis claims that Alabama law gives wide latitude to the inherent powers of a court to

enforce an overly broad agreement by modifying that agreement. In *Nobles-Hamilton v.

Thompson*, 883 So. 2d 1247, 1251 (Ala. 2003), the Alabama Supreme Court stated, "[t]he trial

court certainly had the power to enforce such an overly broad agreement by limiting the

geographical restriction to a more reasonable distance so as to thoroughly protect the interest of

both Thompson and Nobles-Hamilton." *See also Mason Corp. v. Kennedy*, 244 So. 2d 585, 590 (Ala. 1971); *Westwind Technologies, Inc. v. Jones*, No. 1040101, 2005 WL 2327049 (Ala. Sept. 23, 2005). According to Lewis, Block's argument that the court cannot blue pencil is "without merit," as nothing would prevent Lewis from now requesting such an action. Lewis characterizes Block's objection as "simply form over substance." Additionally, Lewis notes that, "[t]he burden is upon the person or entity seeking to enforce a contract which restrains the lawful trade of business to show that it is not void under [Code of Alabama 1975] § 8-1-1." *Calhoun v. Brendle*, 502 So. 2d 689, 693 (Ala. 1986).

B.    **The court did not act *sua sponte*.**

According to Lewis, in *Wingard v. Emerald Venture Florida, LLC*, 438 F.3d 1288 (11th Cir. 2006), the trial court granted *sua sponte* full summary judgment despite the fact that it had only a limited, partial summary judgment actually before it. The court held that, where questions of law predominate over questions of fact, the court may enter summary judgment *sua sponte*. *See also Artistic Entm't v. City of Warner Robbins*, 331 F.3d 1196, 1202 (11th Cir. 2003). Lewis argues that in this case questions of law clearly predominate over questions of fact. She further argues that Block "had every opportunity to recant its own complaint allegations or to develop a further evidentiary record if it so chose in response to that motion," and this court's summary judgment was not *sua sponte* without notice to Block.

C.    **The burden of proof is on Block to enforce the contract.**

Lewis cites *Clark Substations, LLC v. Ware*, 838 So. 2d 360, 363 (Ala. 2002) for its holding that "a person or entity seeking to enforce a contract that restrains the exercise of a lawful trade or business has the burden of showing that it is not void under Ala. Code § 8-1-1."

According to Lewis, Block's argument that Lewis failed to show that no genuine issues of material fact existed is "without merit."

**D.     Block's assignment of error to this court's order.**

Lewis claims that Block has failed to provide any basis for this court to alter, amend or vacate its judgment. Though Lewis notes that Block does cite cases in which courts have enforced employment agreements, Lewis asserts that there exist many cases where courts have refused to enforce such agreements. *See Mason Corp*, 244 So.2d 585; *John Lloyd and Company vs. Stringer*, 456 So.2d 1076 (Ala. 1984); *Sheffield vs. Stoudenmire*, 553 So.2d 125, 126-27 (Ala. 1989); *Calhoun v. Brendle,* 502 So.2d 689 (Ala.. 1986); *Chavers v. Copy Products Company, Inc.*, 519 So.2d 942 (Ala. 1988); *Pitney Bowes, Inc. vs. Berney Office Solutions,* 823 So.2d 659 (Ala. 2001).

According to Lewis, Block claims a protectable interest without evidence or proof. Lewis argues that the one-year enforcement provision is logical, because it would negate any advantage in solicitation that Lewis may have had by virtue of preparing that customer's return the year before. Lewis characterizes any longer enforcement period as punitive. Lewis also notes that she submitted the agreements themselves as evidence for this case. Lewis further notes that this court relied upon Block's own admissions that Lewis and the other defendants were unskilled and had limited relationships with customers.

**III.   Block's Reply.**

**A.     The court's authority to "blue-pencil" the covenants at issue should not be exercised in the absence of relevant evidence.**

Block takes no issue with the assertion that Alabama courts may elect to enforce

employment agreements so as to limit them to what the court deems reasonable. However, Block argues that such is done only after the court actually receives and considers evidence that bears on the overbreadth of the covenant - steps which were not taken in the instant case. *See Nobles-Hamilton v. Thompson*, 883 So. 2d 1247 (Ala. 2003); *Corson v. Universal Door System, Inc.*, 596 So. 2d 565, 569 (Ala. 1991) (affirming trial court's limiting of covenants following two preliminary injunction hearings; such action "is consistent with the broad power vested in the courts of this state to 'mould relief to meet the **equities developed in the trial**'") (emphasis added); *Keystone Automotive Industries, Inc. v. Stevens*, 854 So. 2d 113 (Ala. Civ. App. 2003) (evidentiary hearing); *see also DeVoe v. Cheatham*, 413 So. 2d 1141 (Ala. 1982) (finding of no protectable interest by Supreme Court on appeal from injunction granted in trial court); *Greenlee v. Tuscaloosa Office Prods. and Supply, Inc.*, 474 So. 2d 669 (Ala. 1985) (same); *Chavers v. Copy Prods. Co., Inc. of Mobile*, 519 So. 2d 942 (Ala. 1988) (same). Block notes that the Alabama Supreme Court's decision to blue-pencil in *Cullman Broadcasting Co., Inc. v. Bosley*, 373 So. 2d 830 (Ala. 1979), was made on the basis of an evidentiary record in the trial court where the parties had stipulated the relevant facts.

According to Block, Lewis' Motion for Summary Judgment centered only on the issue of whether the defendants were "professionals" for purposes of exclusion from the employment agreement. Block claims that the arguments and evidence addressed that point and that point alone. Block asserts that Lewis' apparent claim that the submission of the employment agreements provided a sufficient evidentiary basis for the court's decision "misses the mark." Block claims that the agreements do not inform the court of how long the defendants were employed, how many clients they had, their relationships with those clients, whether the

11

agreements would work a hardship on them, nor whether "the restraint for which the parties contracted was in some way broader than Block's protectable interest." In summary, Block argues that the court is empowered to blue-pencil an agreement, but not in absence of evidence that bears on blue-penciling.

### B. In adjudicating the scope of the covenants, the court improperly acted sua sponte.

Block claims that the court's holding in *Wingard*, *supra*, is "almost diametrically the opposite" of what Lewis implies it to be. Block asserts that the Eleventh Circuit **reversed** the trial court for granting a full summary judgment as to issues that were not raised in the partial summary judgment, noting that "the issues remanded to the district court are questions of fact, as to which this court has repeatedly held that sua sponte summary judgment, without notice to the non-moving party, is wrought with the potential for violations of litigants' procedural rights." *Id.* at *7 (citing *Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997) (Rule 56(c)'s ten-day notice requirement is "not an unimportant technicality, but a vital procedural safeguard")). Block further claims that *Artistic Entertainment*, *supra*, also cited by Lewis, affords Lewis no help either. According to Block, the *Artistic Entertainment* court emphasized that sua sponte summary judgment could be appropriate only in cases "involving purely legal questions based on complete evidentiary records...." *Artistic Entertainment v. City of Warner Robbins*, 331 F.3d 1196, 1201 (11th Cir. 2003). Block argues that the evidentiary record, except with respect to the "professional" exception to Ala. Code § 8-1-1, is nonexistent. Finally, Block claims that it "was not provided with the ten days required by Rule 56(c) 'in which to formulate and prepare [its] best opposition to an impending assault upon the continuing viability of [its] claim....'

[*Artistic Entertainment*], 331 F.3d at 1201."

## CONCLUSIONS OF THE COURT

This court could take the position that the defendant's positions as marginal "professionals" (plaintiff having called them such) allowed this court, based on the record before it, to balance the equities and rule as it did. There is no need, however, to create that procedural uncertainty. The plaintiff's Motion will be granted. The defendant's Motion for Summary Judgment will be further considered by the court within fifteen days. The defendants will file any evidence that they wish to submit regarding hardship and other areas suggested by the plaintiff of evidentiary issues not earlier addressed by the defendants. The plaintiff will have fifteen days to respond. Defendants will have ten days to reply.

This 30th day of March, 2006.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**